[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 4, 2007
THOMAS K. KAHN
CLERK

_____

No. 07-10806
Non-Argument Calendar

_____

BIA Nos. A97-629-715 & A97-928-451

ROBERTO FEDERICO SEGURA,
ELIZABETH GOMEZ-RODRIGUEZ,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(September 4, 2007)**

Before TJOFLAT, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

Roberto Federico Segura, the lead petitioner, and his wife Elizabeth Gomez-

Rodriguez ("Gomez"), both citizens of Colombia, petition this court for review of the order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") order finding them removable and denying their applications for asylum and withholding of removal under the Immigration and Nationality Act ("INA") and for relief under the United Nations Convention Against Torture ("CAT").[1]  For the reasons that follow, we deny the petition.

## I.  BACKGROUND

Segura and Gomez entered the United States on non-immigrant visas in some time in 2003.  After remaining beyond his visa's expiration date, Segura was issued a notice to appear in October 2003, charging him with removability under INA § 237(a)(1)(B); 8 U.S.C. § 1227(a)(1)(B).  Segura then filed for asylum, withholding of removal, and protection under the CAT, claiming that he had been persecuted because of his political opinion and membership in a particular social group.  In July 2004, Gomez was issued a notice to appear, charging her with removability, and she too filed for asylum, withholding of removal, and protection under the CAT, asserting claims entirely derivative of the claims asserted in Segura's application.  In August 2004, Gomez's and Segura's applications were

---

[1] Although Segura raises the issue of CAT relief in his appellate brief, he failed to challenge the IJ's denial of CAT relief in his appeal to the BIA.  He has therefore failed to exhaust his available administrative remedies regarding this issue, and we lack jurisdiction to consider it.  Fernandez-Bernal v. U.S. Att'y Gen., 257 F.3d 1304, 1317 n.13 (11th Cir. 2001).

consolidated, with Segura as the lead applicant.

At the removal hearing, Segura testified as follows: Segura worked several years for the Bogota Bowling League. In June 2000, Segura became an active member of the Liberal Party, and in May 2002, he founded a group called Born Again For The Right Future, an organization created to train young people to judge professional bowling tournaments. In August 2002, two individuals identifying themselves as members of the Revolutionary Armed Forces of Colombia ("FARC"), a guerilla organization, came to Segura's office at the bowling league and told him that the young people in Born Again For The Right Future "belonged to them." The FARC members warned Segura that he was "getting into trouble," and told him to "watch out" and "be careful." Segura told Father Hector Sanchez, the president of Born Again For The Right Future, and other members of the bowling league about the incident. After implementing additional security measures, such as changing training schedules, the group decided to continue its activities.

In September 2002, Segura received a threatening telephone call at his home from the FARC, insulting Segura and telling him that he had already been warned to stop working with the youths in his bowling organization. Segura again reported this incident to Sanchez, but continued with his activities for the group.

On October 13, 2002, Segura discovered that his office at the bowling

3

league had been broken into, ransacked, and vandalized with "signs on the wall saying FARC." Although there were other offices in the building, only Segura's had been vandalized. The next day, Segura went to the police station and filed a report regarding the vandalism of his office and the threats he had received from the FARC. But the police told Segura that they could not assist him because there was not enough physical evidence. Some time later, Segura asked for protection from an acquaintance who worked for the National Army, but the acquaintance told him that only the police and prosecutor's office had jurisdiction to provide such protection.

On December 7, 2002, while Segura was leaving work, a vehicle stopped in front of his car and blocked his path. As Segura attempted to maneuver his car around the other vehicle, his car struck the other vehicle, and he sped away. As he drove away, the men from the other vehicle fired gunshots at his car, breaking the rear window. Segura, however, could not identify the shooters.

According to Segura, after this incident, he realized that his life was in danger, and he made arrangements to leave Colombia. He and his wife left Colombia and entered the U.S. in February 2003, but Segura's wife, Gomez, made numerous trips back to Colombia to settle the couple's financial affairs. During her return trips to Colombia, Gomez experienced no difficulties with the FARC.

The IJ denied relief, concluding that Segura had failed to establish that any

4

alleged persecution was on account of his political opinion, that Segura had no objectively reasonable fear of future persecution in Colombia, and that he failed to establish that he would likely be tortured by the Colombian government or with that government's acquiescence.

Segura appealed to the BIA, challenging the denial of asylum and withholding of removal, but failing to challenge the IJ's denial of relief under the CAT. The BIA affirmed the IJ's decision. Noting that the IJ had not made an adverse credibility determination, the BIA assumed that Segura's testimony was credible, but it concluded that the four incidents Segura described did not rise to the level of persecution. The BIA also concluded that Segura had failed to establish an objectively reasonable fear of future persecution on account of a statutorily protected ground. Segura and Gomez now petition this court for review.[2]

## II. DISCUSSION

Segura argues that the BIA erred in denying his applications for asylum and withholding of removal because he submitted enough evidence to establish past

___

[2] As discussed above, Gomez's claims are entirely derivative of Segura's. But this court has held that there are no derivative benefits for withholding of removal. Delgado v. U.S. Att'y Gen., 487 F.3d 855, 861 (11th Cir. 2007). Gomez raised no arguments regarding her entitlement to withholding of removal independent of Segura's before either the IJ or the BIA. As such, to the extent the petition challenges the denial of withholding of removal as to Gomez, we lack jurisdiction to consider it. See Fernandez-Bernal, 257 F.3d at 1317 n.13.

persecution on account of his political opinion.

We review only the BIA's decision except to the extent that the BIA expressly adopts the IJ's decision. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). To the extent that the decision is based on a legal determination, we review the decision de novo. Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1254 (11th Cir. 2006). Factual determinations are reviewed under the substantial evidence test, and this court "must affirm the BIA's [or the IJ's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar, 257 F.3d at 1283-84 (citation and internal quotation marks omitted). Additionally, "[u]nder the substantial evidence test, we review the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." Ruiz, 440 F.3d at 1255 (citing Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005)). Thus, "a finding of fact will be reversed only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Id. (citation omitted).

### A. Asylum

The Attorney General has discretion to grant asylum if an alien meets the INA's definition of a "refugee." INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). The

6

INA defines a refugee as

> any person who is outside any country of such person's nationality . . .
> and who is unable or unwilling to return to, and is unable or unwilling
> to avail himself or herself of the protection of, that country because of
> persecution or a well-founded fear of persecution on account of race,
> religion, nationality, membership in a particular social group, or
> political opinion.

8 U.S.C. § 1101(a)(42)(A). The asylum applicant bears the burden of proving refugee status. Al Najjar, 257 F.3d at 1284. To meet this burden, the applicant must establish, with specific and credible evidence, (1) past persecution on account of a statutorily listed factor, *or* (2) a "well-founded fear" that the statutorily listed factor will cause future persecution. 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287. "[O]nly in a rare case does the record compel the conclusion that an applicant for asylum has suffered past persecution or has a well-founded fear of future persecution." Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1239 (11th Cir. 2006). As this court has explained, "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (internal quotation marks omitted). And "mere harassment does not amount to persecution." Id.

7

If the asylum applicant establishes past persecution, he is presumed to have a well-founded fear of future persecution, unless the government can rebut the presumption.  D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 818 (11th Cir. 2004). If he cannot show past persecution, then he must demonstrate a well-founded fear of future persecution that is both subjectively genuine and objectively reasonable. Ruiz, 440 F.3d at 1257.  The subjective component can be established "by the applicant's credible testimony that he or she genuinely fears persecution," while the objective component "can be fulfilled either by establishing past persecution or that he or she has a good reason to fear future persecution."  Id.

Here, we conclude that the record does not establish that Segura suffered past persecution on account of a protected ground.  As evidence of past persecution, Segura points to four incidents over a five-month period: he received two phone calls warning him to stop working with the youths of his bowling organization; his office was ransacked and vandalized with "signs on the wall saying FARC"; and during a traffic incident, in which a vehicle blocked his path, gunshots were fired at his car.  Excluding the shooting incident, the threats and vandalism do not constitute persecution under this court's case law, as Segura was never physically harmed by the FARC, and the FARC's threats made no mention of physical harm or violence.  See Sepulveda, 401 F.3d at 1231.  And although "intentionally being shot at in a moving car" qualifies as "extreme," Sanchez

8

Jimenez v. U.S. Att'y Gen., --- F.3d ----, 2007 WL 2034955, at *6-*7 (11th Cir. 2007), Segura could not identify the shooters as members of the FARC and he could not identify the reason for the shooting. Given that the FARC never made explicit threats to physically harm Segura, and neither he nor his wife received any communications from the FARC after the shooting, the record does not compel the conclusion that the FARC was responsible for the shooting. Moreover, there is no record evidence establishing a nexus between the shooting and a statutorily protected ground.[3] See Silva, 448 F.3d at 1241.

We also conclude that Segura has not demonstrated a well-founded fear of future persecution on account of a statutorily protected ground that is both subjectively genuine and objectively reasonable. See Ruiz, 440 F.3d at 1257; Al Najjar, 257 F.3d at 1289. Even assuming that Segura satisfied the subjective requirement, he has not shown that his fear was objectively reasonable given that: Segura had only one violent encounter and he could not identify the perpetrators as members of the FARC; Segura received no threats and had no direct encounters

---

[3] In Sanchez Jimenez v. U.S. Att'y Gen., --- F.3d ----, 2007 WL 2034955 (11th Cir. 2007), we recently held that the FARC's attempt to murder an applicant by shooting at his moving vehicle constituted past persecution. Id. at *6-*7. But unlike the shooting in the instant case, in Sanchez Jiminez, (1) the FARC repeatedly threatened to kill the applicant before the shooting; (2) the FARC called the applicant and took responsibility for the shooting; (3) there was a clear nexus between the shooting and the applicant's political activities; and 4) the applicant continued to receive death threats from the FARC after the shooting. Id. As such, the shooting in Sanchez Jiminez is distinguishable from the shooting in the instant case.

9

with the FARC during the two months preceding his entry into the U.S; and Segura's wife, Gomez, returned to Colombia several times after they initially entered the U.S. and she experienced no difficulties with the FARC during these return trips. Furthermore, nothing in the record establishes that Segura belongs to any particular religious, social, or ethnic group, or that he holds any particular political viewpoint that is likely to be targeted by the FARC.

Because the record does not compel the conclusion that Segura suffered past persecution or that he has an objectively reasonable fear of future persecution on account of a statutorily protected ground, we affirm the BIA's denial of asylum.

## B. Withholding Removal

Because Segura cannot establish eligibility for asylum relief, he therefore cannot meet the more stringent burden for withholding of removal. See Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1288 n.4 (11th Cir. 2005) (stating that where a petitioner fails to establish his asylum claim on the merits, his claim for withholding of removal necessarily fails).

## III. CONCLUSION

For the foregoing reasons, we **DENY** the petition.